[No. F026581. Fifth Dist. Dec. 3, 1998.]

DENNIS Z. GAI, Plaintiff and Appellant, v.
CITY OF SELMA, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 3.

**COUNSEL**

Dennis Z. Gai, in pro. per., and John Patrick Moore for Plaintiff and Appellant.

Hargrove & Costanzo and Neal E. Costanzo for Defendant and Respondent.

**OPINION**

**THAXTER, J.—**

### STATEMENT OF THE FACTS AND CASE

Appellant Dennis Z. Gai (Gai) was employed as a police officer with the Selma Police Department. On November 8, 1989, Gai was served with "Notice of Intended Disciplinary Action," proposing his employment as a peace officer be terminated for stated reasons. Gai responded to the notice and on or about December 5, 1989, he was served with notice of termination based on the same charges of misconduct. The termination was effective November 15, 1989.

Gai appealed the decision to terminate his employment to the Selma Personnel Commission (Commission) in accordance with rule XII of the City of Selma's Personnel Rules and Regulations. The Commission is a body

of five persons appointed by the Selma City Council (Council). The Commission is charged with the responsibility of conducting evidentiary hearings on appeals by city employees from disciplinary actions taken against them. Pursuant to ordinance, members of the Commission are appointed by the mayor with the approval of the Council. Each appointment to the Commission is for a term of four years.

On or about January 1, 1990, following the filing of Gai's appeal to the Commission, but before the appeal had been heard, the terms of the entire Commission expired. Calvin Nishinaka and Larry Fitzpatrick were reappointed to the Commission. Also appointed were Douglas Kessler (Kessler), Tony Soto and David Helm (Helm).

On April 17, 1990, the first day of the administrative hearing, Gai's attorney brought a motion to disqualify Helm from sitting on the case. A written motion, supported by Gai's affidavit, was filed with the Commission, alleging Helm was "financially and/or personally interested" in the outcome of the hearing and was therefore biased. Gai alleged a member of Helm's family was a suspected unlawful drug user who had received special protection from Mike Del Puppo (Del Puppo), the Selma detective who conducted the internal affairs investigation against Gai. Gai claimed Helm had a longtime personal relationship with Del Puppo and was privy to confidential information about the operations of the Selma Police Department. Gai alleged Helm had business contracts with the City of Selma (City) to supply fuel and towing services and that Helm made large donations to the police department. The City filed an opposition to the disqualification motion, but no affidavits or evidentiary materials were presented.

Following oral argument, the Commission, with Helm abstaining, unanimously voted to deny the motion for disqualification. Thereafter, Helm denied a direct request that he recuse himself voluntarily.

The administrative hearing was conducted by the Commission from April 17 to June 8, 1990. The Commission voted, three to two, to affirm Gai's discharge and thereafter issued two written opinions, the majority's "Advisory Decision and Recommendation" and a "Dissenting Opinion and Recommendation." Both opinions were submitted to the Council.

Under the City's personnel rules, the Council is required to review and either adopt, reject, or modify the recommendation of the Commission relating to the imposition of discipline against the employee. Prior to the noticed public meeting, Gai filed a second objection to Helm's participation

in the hearing before the Commission. The letter brief was accompanied by declarations from Gai, Kessler and Estella Garcia (Garcia).[1]

At the October 15, 1990, meeting of the Council, the due process challenge was considered and rejected. The Council then voted, three to zero,[2] to adopt the Commission majority's advisory decision in support of termination.

Gai challenged the decision by filing a petition for writ of administrative mandamus, complaint for violation of civil rights and for punitive damages and attorney fees with the Fresno County Superior Court on January 17, 1991. The pleadings alleged two causes of action: the first for writ of administrative mandamus under Code of Civil Procedure section 1094.5[3]; the second alleged violations of Gai's civil rights under 42 United States Code section 1983.

The case was removed to the United States District Court for the Eastern District of California, to determine the federal question raised by the civil rights claim. The City's motion for summary judgment was granted on the civil rights cause of action. The City's motion for summary judgment on Gai's claim under section 1094.5 was denied and the claim remanded to state court. The Ninth Circuit Court of Appeals subsequently affirmed the ruling of the district court.

The remanded state cause of action was set for hearing on peremptory writ of mandate in the superior court for October 3, 1995. The City answered the petition. The parties stipulated to the voluminous operative record of the proceedings for the court to utilize in its decision.

The superior court, in a 147-page statement of decision, denied Gai's request to set aside the decisions of the Commission and Council. The court also determined that there was no abuse of discretion within the meaning of section 1094.5. On June 10, 1996, the court entered judgment denying Gai's petition.

On appeal, Gai requests the judgment be reversed based on his claim that his "due process right to a fair hearing by an impartial [and unbiased] decision maker was denied by the City of Selma."

---

[1]Garcia was a former Commission member who was not reappointed to another term in 1990.

[2]Two Council members, James Brockett and Dennis Lujan, abstained from voting or participating.

[3]All further statutory references will be to the Code of Civil Procedure unless otherwise noted.

DISCUSSION

1. *The court properly ruled that Gai must prove actual bias to prevail on his due process claims.*

 When a fundamental vested right is involved, the function of the trial court is to exercise its independent judgment in reweighing the evidence. The trial court did so here. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 913-916 [80 Cal.Rptr. 89, 458 P.2d 33]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71-72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) Our review of the facts is limited to determining if the evidence supports the trial court's findings (*Yakov* v. *Board of Medical Examiners, supra,* at p. 69), but the trial court's legal conclusions are open to our examination to determine if errors of law were committed (*Merrill* v. *Department of Motor Vehicles, supra,* at p. 913).

 The trial court ruled that while the evidence clearly showed an "appearance of bias" on Helm's part, there was insufficient evidence of "actual bias" to disqualify him. Gai contends the trial court erred in its reliance upon the need to find "actual bias," and the required proof, "the probability or likelihood of bias," was sufficiently shown here. Respondent City acknowledges there are some situations where the "probability or likelihood of the existence of actual bias is so great" to require disqualification, but Gai's case was distinguishable from such situations, and the evidence, at most, showed an "appearance of bias."

 As explained in *Burrell* v. *City of Los Angeles* (1989) 209 Cal.App.3d 568 [257 Cal.Rptr. 427], an individual's minimum requisite procedural due process rights are federally mandated. (*Id.* at pp. 576-577.) Specific requirements for procedural due process, however, vary depending upon the situation under consideration and the interests involved. (*Binkley* v. *City of Long Beach* (1993) 16 Cal.App.4th 1795, 1807 [20 Cal.Rptr.2d 903]; *People* v. *Ramirez* (1979) 25 Cal.3d 260, 264 [158 Cal.Rptr. 316, 599 P.2d 622].) "[P]rocedural due process in an administrative setting requires notice of the proposed action; the reasons therefor; a copy of the charges and materials on which the action is based; and the right to respond to the authority initially imposing the discipline 'before a reasonably impartial, noninvolved reviewer.' (*Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736-737 [150 Cal.Rptr. 475, 586 P.2d 956].)" (*Burrell* v. *City of Los Angeles, supra,* 209 Cal.App.3d at p. 581.)

The standard of impartiality required at an administrative hearing is less exacting than that required in a judicial proceeding. (*Burrell* v. *City of Los*

*Angeles, supra*, 209 Cal.App.3d at p. 580.) This point was also stressed by Justice Newman in his concurrence in *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 796-797 [171 Cal.Rptr. 590, 623 P.2d 151]. Where due process requires an administrative hearing, an individual has the right to a tribunal "which meets at least currently prevailing standards of impartiality." (*Wong Yang Sung* v. *McGrath* (1950) 339 U.S. 33, 50 [70 S.Ct. 445, 454, 94 L.Ed. 616].)

■ As in federal courts, our Supreme Court requires a party seeking to show bias or prejudice on the part of an administrative decision maker to prove the same with concrete facts: " 'Bias and prejudice are never implied and must be established by clear averments.' [Citation.] Indeed, a party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals." (*Andrews* v. *Agricultural Labor Relations Bd.*, supra, 28 Cal.3d at p. 792; accord, *Gill* v. *Mercy Hospital* (1988) 199 Cal.App.3d 889, 910-911 [245 Cal.Rptr. 304]; *American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 472-473 [230 Cal.Rptr. 769].) The court in *Andrews* added, "[O]ur courts have never required the disqualification of a judge unless the moving party has been able to demonstrate concretely the actual existence of bias. We cannot now exchange this established principle for one as vague, unmanageable and laden with potential mischief as an 'appearance of bias' standard, despite our deep concern for the objective and impartial discharge of all judicial duties in this state. [¶] The foregoing considerations, of course, are equally applicable to the disqualification of a judicial officer in the administrative system. Indeed, the appearance of bias standard may be particularly untenable in certain administrative settings." (*Andrews* v. *Agricultural Labor Relations Bd.*, supra, 28 Cal.3d at pp. 793-794, fn. omitted.)

In *Andrews*, an agricultural employer had been charged with restraining and interfering with its employees under the Agricultural Labor Relations Act. The employer sought to disqualify the administrative law officer from hearing an unfair labor practices case because his law firm had regularly represented Spanish-surnamed persons and farmworkers. (28 Cal.3d at p. 787.) The Supreme Court granted review "to explicate the grounds upon which a finding of bias sufficient to compel disqualification may be based." (*Id.* at p. 785.) The court stated, "The right to an impartial trier of fact is not synonymous with the claimed right to a trier completely indifferent to the general subject matter of the claim before him. As stated in *Evans* v. *Superior Court* (1930) supra, 107 Cal.App. 372, 380, the word bias refers ' "to the mental attitude or disposition of the judge towards a party to the

litigation, and not to any views that he may entertain regarding the subject matter involved." ' " (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 790.)

*Andrews* found, even assuming arguendo the legal or political views of an administrative officer could result in an appearance of bias, such an appearance was not valid grounds for disqualification. (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 791.) The *Andrews* court quoted with approval from *Ensher, Alexander & Barsoom* v. *Ensher* (1964) 225 Cal.App.2d 318, 322 [37 Cal.Rptr. 327], " 'In order for the judge to be disqualified, the prejudice must be against a particular party . . . *and* sufficient to impair the judge's impartiality so that it appears probable that a fair trial cannot be held.' " (28 Cal.3d at p. 792.)

In *Burrell* v. *City of Los Angeles,* workers attacked an administrative procedure which permitted the same official who instituted and investigated disciplinary proceedings and recommended a particular penalty, to have the final say on the severity of penalty imposed. The *Burrell* court found this procedure was not violative of the employees' due process rights. (209 Cal.App.3d at p. 579.)

In *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375], neither prior knowledge of the factual background which bore on the decision nor prehearing expressions of opinions on the result disqualified an administrative body from acting on the matter before it. (*Id.* at p. 782.)

"Our Supreme Court has emphatically rejected the notion that a subjective 'appearance of bias' is enough to taint an entire legislatively created system of handling disciplinary matters." (*Burrell* v. *City of Los Angeles, supra,* 209 Cal.App.3d at p. 582.) In a footnote, however, *Andrews* observed, and *Burrell* acknowledged, both decisional law and statute provide for disqualification of a judicial officer based on the "probability or likelihood of the existence of actual bias" where such is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party. (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 793, fn. 5; *Burrell* v. *City of Los Angeles, supra,* at p. 582.)

The court in *Andrews* explained such instances are codified in former section 170, subdivisions 1-4,[4] which include cases in which the judicial officer either has a personal or financial interest, has a familial relation to a

---

[4]This section was repealed in 1984 and replaced by new section 170.1 et seq. Section 170.1 now reads, in pertinent part: "(a) A judge shall be disqualified if any one or more of the

party or attorney, or has been counsel to a party. As stated in *Andrews,* "The Legislature has demanded disqualification in these special situations regardless of the fact that the judicial officer nevertheless may be able to discharge his duties impartially. The evident and justifiable rationale for mandatory disqualification in all such circumstances is apprehension of an appearance of unfairness or bias." (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 793, fn. 5.) The court in *Andrews* stated the foregoing considerations were equally applicable to the disqualification of a judicial officer in an administrative system. (*Id.* at p. 794.)

In *Gray* v. *City of Gustine* (1990) 224 Cal.App.3d 621 [273 Cal.Rptr. 730] we acknowledged that *Andrews* held that section 170.1, subdivision (a)(1), and sections 170.2 through 170.4, although written for state court judges, should apply to administrative hearings as well. (224 Cal.App.3d at p. 632.)

*Burrell,* without mentioning section 170 at all, also relied on the *Andrews* reasoning, stating, "Thus, it appears that the highest court of this state construes the state Constitution's due process guaranty of a fair and impartial administrative decisionmaker in the same manner as the federal courts have interpreted parallel provisions in the federal Constitution. In other words, mere involvement in ongoing disciplinary proceedings does not, per se, violate due process principles. Those principles are violated, conversely, if the official or officials who take part in the proceedings are demonstrably biased or if, in the least, circumstances such as personal or financial interest strongly suggest a lack of impartiality." (*Burrell* v. *City of Los Angeles, supra,* 209 Cal.App.3d at p. 582.)

Stated succinctly, "Disqualification should occur if there is actual bias. Disqualification may also be necessary if a situation exists under which human experience teaches that the probability of actual bias is too high to be constitutionally tolerable." (*Hackethal* v. *California Medical Assn.* (1982) 138 Cal.App.3d 435, 443 [187 Cal.Rptr. 811].)

Gai contends the "probability or likelihood of the existence of actual bias" on Helm's part was so great that disqualification was required even without proof of "actual bias." No trial court finding supports this assertion. Rather, the trial court found the following about Helm:

---

following is true: [¶] (1) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding. [¶] . . . [¶] (2) The judge served as a lawyer in the proceeding . . . . [¶] . . . [¶] (3) The judge has a financial interest in the subject matter in a proceeding or in a party to the proceeding. . . . [¶] . . . [¶] (4) The judge, or the spouse of the judge, or a person within the third degree of relationship to either of them . . . is a party to the proceeding . . . ." (For a detailed overview of the former and current law see 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, §§ 91-134, pp. 127-178.)

1. The City accepted and submitted a written proposal from Helm for the sale of fuel for city-owned vehicles, including police vehicles. The City began purchasing fuel from Helm's service station after the City was forced to discontinue using its own fuel supply due to ground contamination. Helm's service station was the only one within the City limits which was open 24 hours a day.

2. Helm's towing service, along with other towing services, was used by the Selma Police Department on a regular, rotating basis. Business generated by the police department was given to whichever towing service was next on the list.

3. Helm donated approximately $3,700 to the police department to purchase a remote-controlled model police vehicle used in conducting drug awareness programs. He also made several smaller donations to the police department.

4. Six individuals who were previously employed as attendants at Helm's service station were subsequently employed by the Selma Police Department. At no time were any of the employees simultaneously employed by both Helm and the City or its police department.

5. Helm rented a small house to the Narcotics Task Force of the Selma Police Department for a short time.

6. Helm engaged in a running pattern of comments, side remarks, and gossip, primarily to Kessler, during the course of the hearing. The conversations were inappropriate but did not constitute prejudgment or predetermination, nor did they deprive Gai of a fair hearing.

7. Helm's many friends and connections in the police department raised an "appearance of impropriety" but did not show actual bias or the probability or the likelihood of actual bias.

In summary, the court said: "At most Gai has proven Helm engaged in loose talk which gave rise to an appearance of injudicious conduct but which did not rise to the level of actual bias. Moreover, Helm's furnishing gasoline to the Selma Police and house rental, personal acquaintances and contributions and support [to] law enforcement projects while constituting an appearance of impropriety, has not been shown to constitute a stake in the outcome of the litigation. [Gai] has not produced any substantial evidence that Helm believed a favorable decision to Gai would jeopardize his fuel contract, or any personal relationships with members of the Selma Police Department.

Moreover, the final decision being reviewed is that of the City Council[,] two members of which took no part in the decision. There is no evidence whatsoever that a bias, conflict of evidence [*sic*], or other impropriety influenced the decision of the City Council. The ultimate responsibility for the termination decision is with the City Council."

Gai relies upon a number of cases distinguished in *Burrell* finding the probability of bias sufficient to disqualify where financial or personal bias is shown. The California intermediate appellate decisions relied upon by Gai for this argument are distinguishable.

In *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831], nearly one-half of the members of the panel reviewing a decision to suspend a physician's obstetrical staff privileges were also members of the committee which made the suspension decision. Included on this committee was the physician who originally requested the investigation. The bylaws mandated review of the ad hoc committee's decision by the executive committee. The executive committee was a 12-member body upon which 5 members of the ad hoc committee sat. The court in *Applebaum* found the situation, completely apart from any question of actual bias, to present a violation of fair procedure right to an impartial tribunal by virtue of a "practical probability of unfairness." (*Id.* at pp. 651, 659.) "As a practical matter and without in any way impugning their good faith, the general practitioner and pediatric specialist members of the ad hoc committee were in an extremely difficult position. The charges were brought by one of the two specialists on whom they were accustomed and, indeed, required to rely for obstetrical expertise and with whom they were in frequent and intimate professional contact. His associate supported the charges and the committee was thus presented with a solid front of the only special expertise available to it. To presume impartiality of the ad hoc committee in such circumstances goes beyond what can reasonably be expected of human beings in this professional setting. In this situation a realistic appraisal of psychological tendencies and human weakness compels the conclusion that the risk of prejudgment or bias was too high to maintain the guarantee of fair procedure. [Citation.]" (*Applebaum* v. *Board of Directors, supra*, 104 Cal.App.3d at pp. 659-660.)

Here, Gai's contention of bias does not include the city manager with whom he had a pretermination hearing, nor does it include the members of the Council. The sole complaint is over the claimed bias of a member of the panel conducting the posttermination appeal. Unlike *Applebaum*, there are no overlaps between individuals responsible for the punishment imposed and those comprising the membership of the board reviewing the sufficiency of the grounds for imposing it.

In *Mennig* v. *City Council* (1978) 86 Cal.App.3d 341 [150 Cal.Rptr. 207], the court found no proof of actual bias, but rather found an appearance of personal bias against the police chief sufficient to disqualify the administrative body. The police chief and city council engaged in a heated running dispute over the administration of the police department. The city council then fired the police chief. (*Id.* at pp. 345-346.) The police chief subsequently appealed his termination to the civil service commission, which found none of the charges against him were supported by substantial evidence and recommended he be disciplined but reinstated. The city council disapproved of the commission's findings and refused to reinstate the police chief. (*Id.* at p. 349.)

The court in *Mennig* found the city council was not an independent tribunal. Rather, the court found the record supported the determination members of the city council had "become so personally embroiled in the controversy with [the police chief]" that it created a "probability of actual bias" in the members of the city council that their further participation as decision makers was constitutionally intolerable. (*Mennig* v. *City Council*, *supra*, 86 Cal.App.3d at p. 351.) Here, however, unlike *Mennig*, Gai does not claim Helm was personally embroiled in the controversy leading to his termination.

The factor most often considered destructive of administrative board impartiality, and that alleged here, is bias arising from pecuniary interests of board members. Gai cites *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983 [138 Cal.Rptr. 594] in which American Motors notified its South Lake Tahoe dealer that it would terminate his Jeep franchise for failure to develop sufficient sales volume. Hearing officers determined the proposed termination was for good cause. The dealer filed a protest with the New Motor Vehicle Board, which rejected the proposed decision. American Motors sought a writ of mandate from the superior court. The trial court determined that because four of the nine members of the New Motor Vehicle Board are, by statute, new car dealers, they may reasonably be expected to be antagonistic to franchisers such as American Motors. "The conclusion is unavoidable that dealer-members of the Board have an economic stake in every franchise termination case that comes before them." (*Id.* at p. 987.)

Since it was to every dealer's advantage not to permit termination for low sales performance, the court found a lack of procedural fairness for a manufacturer/litigant. The court considered the fact that the board members were mandated to be new car dealers; there was a lack of counterbalance in mandated manufacturer members; the nature of all cases would be adversarial—dealers versus manufacturers; and the nature of all controversies

would be disputes between dealers and manufacturers. (*American Motors Sales Corp.* v. *New Motor Vehicle Bd.*, *supra*, 69 Cal.App.3d at p. 992.) The board members were not found to be partial because of views they held on issues of law or policy, but rather they held an "economic stake" in every franchise termination case which came before them. (See also *Chevrolet Motor Division* v. *New Motor Vehicle Bd.* (1983) 146 Cal.App.3d 533, 540 [194 Cal.Rptr. 270]; *Nissan Motor Corp.* v. *New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109, 114 [202 Cal.Rptr. 1].)

As explained in *American Motors Sales Corp.*, the landmark case on due process limitations upon pecuniary conflicts of interest is *Tumey* v. *Ohio* (1927) 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749] in which a mayor/judge, in addition to his regular salary, was paid a certain sum per case in liquor violation cases in which he found the defendant guilty. The *Tumey* court found this to be a violation of due process, stating, "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused denies the latter due process of law." (273 U.S. at p. 532 [47 S.Ct. at p. 444].)

The *Tumey* doctrine was extended in *Ward* v. *Village of Monroeville* (1972) 409 U.S. 57 [93 S.Ct. 80, 34 L.Ed.2d 267] in which the mayor/judge had no direct pecuniary interest in convicting the accused, but the fines he levied constituted almost half of the village revenues. The Supreme Court found this to be a violation of due process as it presented a "possible temptation" by which "the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." (*Id.* at p. 60 [93 S.Ct. at p. 83]; see also *People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 266 [137 Cal.Rptr. 476, 561 P.2d 1164].)

In *Gibson* v. *Berryhill* (1973) 411 U.S. 564 [93 S.Ct. 1689, 36 L.Ed.2d 488], the issue was whether the Alabama Board of Optometry, consisting of privately practicing optometrists, was a fair tribunal to determine whether it was or was not "unprofessional conduct" for an optometrist to practice in Alabama as a salaried employee of a business corporation. The Supreme Court ruled the board of optometry was not a fair tribunal for determination of the "unprofessional conduct" charges, "[b]ecause the Board of Optometry was composed solely of optometrists in private practice for their own account, . . . [and] success in the Board's efforts would possibly redound to the personal benefit of members of the Board . . . ." (*Id.* at p. 578 [93 S.Ct. at p. 1698].)

Although *Tumey* and *Ward* involved judges as opposed to administrative officers, *Gibson* stated, "It has also come to be the prevailing view that

'[m]ost of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators.' [Citation.]" (*Gibson* v. *Berryhill, supra,* 411 U.S. at p. 579 [93 S.Ct. at p. 1698].)

On the other end of the spectrum and instructive here is *Central & West Basin Water etc. Dist.* v. *Wong* (1976) 55 Cal.App.3d 191 [127 Cal.Rptr. 448] (*Central*) in which the claimed pecuniary interest was not sufficient to disqualify a judge. *Central* analyzed former section 170[5], which provided in part: "No justice or judge shall sit or act as such in any action or proceeding: 1. To which he is a party; or in which he is interested . . . ." (Stats. 1979, ch. 730, § 17, pp. 2472-2473). The word "interested" was found to include only an interest that was " 'direct, proximate, substantial, and certain,' " and did not include a " 'remote, indirect, contingent, uncertain, and shadowy interest.' " (*Central, supra,* 55 Cal.App.3d at p. 194.)

In *Central* the pecuniary interest of the judge assigned to preside over a class action was in question. Petitioners sought a decree compelling the district to charge everyone the same fee for water. The petitioners asserted that, because the decree would result in increased revenues to the district and might reduce property tax and water rates within the district, and because the judge paid property taxes to the district and purchased from another public entity water supplied by the district, the judge might have an "interest" in the proceeding. (*Central, supra,* 55 Cal.App.3d at pp. 193-194.) The court denied the disqualification petition, stating the effect on the judge of the outcome of the litigation would be too contingent, remote, and attenuated to constitute a disqualifying interest. (*Id.* at p. 195.)

Also instructive is *Linney* v. *Turpen* (1996) 42 Cal.App.4th 763 [49 Cal.Rptr.2d 813] in which an airport police officer was suspended in an administrative hearing because he lied to a superior officer during an investigation. The officer alleged the method of selecting the hearing officer and the fact the employer paid for the hearing officer deprived him of due process. (*Id.* at p. 765.) The officer's argument was that payment of the hearing officer by the respondent rendered the hearing officer biased, because the more cases he decided favorably to the respondent, the more cases the respondent would give him. The court did not reach the merits of the officer's argument because the officer failed to raise the point below, which precluded the creation of a meaningful record on the point. "For example, the record developed below tells us nothing about this hearing officer's past volume of cases for the airport, what period of time is encompassed by those rulings, the nature of his prior rulings, etc." (*Id.* at p. 770, fn. 4.)

The court in *Linney* went on to state, "In any event, we do not find the theory compelling as a matter of law." (*Linney* v. *Turpen, supra,* 42

---

[5]See footnote 4, *ante.*

Cal.App.4th at p. 770.) In a footnote the court stated, "If it is the position of appellant and our dissenting colleague that, by virtue of the way the hearing officer is selected and compensated, he or she thus has a 'financial interest' in the case, we would be constrained to note that, as suggested by footnote 5 of *Andrews* [v. *Agricultural Labor Relations Bd.*], *supra*, 28 Cal.3d at page 793, 'financial interest' in this context should be as defined in . . . section 170.5, subdivision (b), nothing less but also nothing more."[6] (*Linney* v. *Turpen*, *supra*, 42 Cal.App.4th at p. 772, fn. 7.)[7]

Of course, the above analysis in *Linney* is dicta. However, it is consistent with the holding in *Central* that something more than speculation as to a financial interest in the outcome of the proceeding is needed to find "probability or likelihood of actual bias" of the decision maker.

▮▮▮▮ In this case, whatever pecuniary interest Helm may have had did not have the same impact as that illustrated in *Tumey* and *Ward*, nor did it rise to the level of that in *Gibson* or *American Motors Sales Corp*. The trial court found it was not obvious Helm's efforts on the Commission would in any way redound to his personal benefit. In that way, the situation is more akin to that in *Central* in that Helm's pecuniary interest in the outcome of Gai's termination appeal was remote, indirect and uncertain. (*Central*, *supra*, 55 Cal.App.3d at p. 194.)

Gai argues that the trial court misunderstood the required standard of bias necessary to disqualify Helm. Gai claims, since the trial court ruled there was insufficient evidence of "actual bias" to disqualify Helm, it was not taking into account the cases distinguished in *Burrell*, all dealing with personal or financial interest, in which the "probability or likelihood of actual bias" was the required standard. However, not only can the cases in

---

[6]Section 170.5, subdivision (b) states: " 'Financial interest' means ownership of more than a 1 percent legal or equitable interest in a party, or a legal or equitable interest in a party of a fair market value in excess of one thousand five hundred dollars ($1,500), or a relationship as director, advisor or other active participant in the affairs of a party, except as follows: [¶] (1) Ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in those securities unless the judge participates in the management of the fund. [¶] (2) An office in an educational, religious, charitable, fraternal, or civic organization is not a 'financial interest' in securities held by the organization. [¶] (3) The proprietary interest of a policyholder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest."

[7]The lead opinion in *Linney* was authored by Justice Haerle. Justice Phelan concurred, but stressed that the "pecuniary conflict of interest" issue was waived and should not have been considered. Nevertheless, Justice Phelan, in response to the dissenting opinion of Presiding Justice Kline, expressly agreed with the lead opinion's conclusion that the mere existence of a judge's pecuniary interest does not necessarily constitute a deprivation of due process. (*Linney* v. *Turpen*, *supra*, 42 Cal.App.4th at pp. 777-779 (conc. opn. of Phelan, J.).)

*Burrell* be distinguished, but the record does not substantiate Gai's contention as the court appears to have used the correct standard in making its determination, although perhaps not clearly articulated.

In its statement of decision, the trial court acknowledged the *Burrell* court's observation that there were some situations in which a decision maker should be disqualified because of the "probability" of bias, such as when he has a personal or financial interest in the outcome. At one point the trial court stated it found not only had Gai failed to establish "actual bias," but he had also failed to establish "a direct, personal, substantial, or pecuniary stake in the outcome of the litigation." In other words, the trial court found Gai failed to establish the "probability or likelihood of actual bias" needed to disqualify Helm.

2. *Section 170.1, subdivision (a)(6)(C) does not apply in determining Helm's impartiality or lack thereof.*

■■■ Gai claims that the court erred by not using the objective standard of section 170.1, subdivision (a)(6)(C) in deciding whether Helm should have been disqualified. Section 170.1 states, in pertinent part:

"(a) A judge shall be disqualified if any one or more of the following is true:

. ". . . . . . . . . . . . . . . . . . . . . . .

"(6) For any reason . . . (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. . . ."

In *Catchpole* v. *Brannon* (1995) 36 Cal.App.4th 237 [42 Cal.Rptr.2d 440], the court explained, "[F]ormer section 170, subdivision (a)(5) . . . had been construed to require a showing of bias in fact. [Citation.] That statute was, however, replaced by section 170.1, subdivision (a)(6)(C) in 1984. The new statute altered the requirement by making the disqualification standard ' "fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man [or woman] would entertain doubts concerning the judge's impartiality, disqualification is mandated. 'To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person.' [Citation.]" ' [Citations.]" (36 Cal.App.4th at pp. 245-246, fn. omitted.)

At the outset we express some doubt whether Gai preserved this issue for appeal. In the trial court he filed two written briefs and submitted oral argument without once citing the court to section 170.1, subdivision (a)(6)(C). The nearest he came to raising the issue was by citing and discussing *United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97 [216 Cal.Rptr. 4]. The issue in that case was whether a *superior court judge* should be disqualified under the new statute because of a possible appearance of bias. It did not in any way address the statute's applicability or inapplicability to an administrative hearing officer.

In addition, Gai seems to want the benefit of the new statute's expanded disqualification standard without adhering to its procedural requirements for judicial review. ■ Section 170.3, subdivision (d) provides that no appeal lies from the determination of a judge's disqualification, and review is limited to a writ of mandate sought within 10 days of the determination. The purpose of this rule is twofold. It seeks to eliminate the waste of time and money which would flow from continuing the proceeding subject to its being voided by an appellate ruling that the disqualification decision was erroneous. It also promotes fundamental fairness by denying the party seeking disqualification a second "bite at the apple" if he loses on the merits but succeeds on appeal from the disqualification order. (*People* v. *Hull* (1991) 1 Cal.4th 266, 272-273 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

Gai has not shown that he sought a writ of mandate immediately after Helm's decision not to disqualify himself. As a result, the administrative hearing before the Commission proceeded, followed by the Council's review. This process consumed nearly six months and generated a record of nearly four thousand pages before Gai sought any judicial review. Arguably, we could treat Gai's failure to follow the dictates of section 170.3, subdivision (d) as a waiver of his claim based on section 170.1, subdivision (a)(6)(C).

Assuming that the issue is properly before us, however, we will reject Gai's contention.

No published case has directly considered whether section 170.1, subdivision (a)(6)(C) applies to administrative hearing officers. Gai argues it should, relying on this court's comment that the Supreme Court, in *Andrews*, held that some of the statutory bases for disqualifying judicial officers are applicable to administrative hearing officers as well. (*Gray* v. *City of Gustine, supra*, 224 Cal.App.3d at p. 632.) When viewed in the context of the actual *Andrews* holding and our discussion in *Gray*, we conclude our comment there does not support Gai's argument.

In *Andrews* the Supreme Court considered a challenge to an administrative law officer. The court refused to apply an "appearance of bias" standard. The court noted that under the then governing statutes the appearance of bias standard applied to judicial officers only in cases in which the officer "either has a personal or financial interest, has a familial relation to a party or attorney, or has been counsel to a party." (*Andrews* v. *Agricultural Labor Relations Bd.*, *supra*, 28 Cal.3d at p. 793, fn. 5.) The court went on to reject the adoption of a general appearance of bias standard, noting that it "may be particularly untenable in certain administrative settings." (*Id.* at p. 794.)

*Andrews* did not address or decide the question of whether section 170.1, subdivision (a)(6)(C), which was subsequently enacted, should apply to administrative hearing officers. To the extent our comment in *Gray* may be construed as suggesting the Supreme Court decided that question, we were obviously in error. As far as Supreme Court decisions are concerned, the issue is open.

Furthermore, our actual holding in *Gray* does not support Gai. In *Gray* we held that the administrative appeal offered the plaintiff failed to comport with the fair hearing aspect of due process because it was to be conducted by the same manager who exercised the punitive action against the employee. (*Gray* v. *City of Gustine*, *supra*, 224 Cal.App.3d at p. 631.) That holding has no application to this case, since Helm was not involved in the original decision to terminate Gai. In *Gray* we went on to consider another of the plaintiff's allegations; i.e., that the city council was prejudiced against him and could not conduct an impartial hearing. The only basis advanced for that contention was that the city council members heard evidence of the city manager's investigation of the plaintiff. We held that was insufficient by itself to establish bias. In doing so we cited section 170.1, subdivision (a)(1) which provides for a judge's disqualification if the judge "has personal knowledge of disputed evidentiary facts concerning the proceeding." This was the context in which we made the perhaps overly expansive statement that *Andrews* held that "these sections should apply to administrative hearing officers as well" as judges. (*Gray* v. *City of Gustine*, *supra*, at p. 632.) The only sections we referred to were 170.1, subdivision (a)(1), and 170.2 through 170.4.[8] We did not mention section 170.1, subdivision (a)(6)(C) and it was apparently not raised by the parties. Thus, our comments implying that the same rules apply to administrative hearing officers as apply to judges must be construed either as limited to the sections discussed or as dicta.

---

[8] In context, it appears our reference to sections 170.2 through 170.4 should, instead, have been to section 170.1, subdivision (a)(2) through (a)(4) or former section 170, subdivisions 2 through 4.

In any event, neither *Andrews* nor *Gray* leads to the conclusion sought by Gai. Both of those cases referred to the judicial disqualification statutes as support for a decision that administrative hearing officials should *not* be disqualified. In essence, they stand for the proposition that even if the decisionmakers were judges they would not be disqualified on the facts shown. That statement does not logically convert to one that because a judge would be disqualified under these facts, so should an administrative hearing officer.

The only mention made of section 170.1, subdivision (a)(6)(C) in a case involving an administrative hearing is in *Linney* v. *Turpen, supra*, 42 Cal.App.4th 763. For several reasons, however, that case has little, if any, precedential value on this issue.

First, the discussion in *Linney* regarding section 170.1, subdivision (a)(6)(C) is dicta, since both the lead and concurring opinions acknowledged that the appellant's claim of bias based on the hearing officer's alleged financial interest had been waived. The appellant neither raised the issue in the trial court nor created a meaningful record on the point. (*Linney* v. *Turpen, supra*, 42 Cal.App.4th at p. 770 (lead opn.); *id.* at pp. 777-778 (conc. opn. of Phelan, J.).)

Second, the views expressed on the new statute's application to administrative hearing officers are those only of the lead opinion's author. The concurring justice expressly declined to join in discussion of the financial conflict of interest issue. (*Linney* v. *Turpen, supra*, 42 Cal.App.4th at pp. 777-779 (conc. opn. of Phelan, J.).) The third justice dissented and suggested that section 170.1, subdivision (a)(6)(C) does apply to administrative hearing officers. (*Linney* v. *Turpen, supra*, at pp. 792-793, fn. 9, and 795 (dis. opn. of Kline, P. J.).)

Finally, the lead opinion in *Linney* is not clear in stating whether the new statute should or should not apply to administrative hearing officers. The opinion first reiterates the importance of the holding in *Andrews* and the necessity to demonstrate concretely the actual existence of bias to disqualify a judge. In a footnote, *Linney* then states, "The fact that the statute in effect at the time of the *Andrews* decision (former Code Civ. Proc., § 170, subd. (a)(5)) was subsequently replaced by Code of Civil Procedure section 170.1, subdivision (a)(6)(C), as we acknowledged in *Catchpole* v. *Brannon* (1995) 36 Cal.App.4th 237, 246 . . . , in no way lessens the import of the California Supreme Court's *Andrews* holding as to what type of a showing is required in order to find bias." (*Linney* v. *Turpen, supra*, 42 Cal.App.4th at pp. 771-772, fn. 6.) This statement implies that disqualification of an

administrative decision maker for bias still requires a showing of actual bias or the likelihood or probability of bias as explained earlier. Later, however, the opinion refers to the new statute as providing "an alternative standard for possible disqualification" but concludes that the record before the court "does not sustain even an 'appearance of bias.' " (*Id.* at p. 776.)

█ Lacking any compelling authority, we decline to extend the new judicial disqualification statute to all cases involving administrative hearing officers. Our reasons are threefold.

First, to do so would obliterate the distinction between judicial and administrative proceedings carefully articulated by the courts for due process purposes. (See *Burrell* v. *City of Los Angeles*, *supra*, 209 Cal.App.3d at p. 581; *Andrews* v. *Agricultural Labor Relations Bd.*, *supra*, 28 Cal.3d at pp. 796-797 (conc. opn. of Newman, J.).) It is reasonable to assume that if the Legislature intended to equate all administrative hearing officers with judges, it would have done so more directly than by amending a statute which, by its terms, defines the term "judge" to mean "judges of the justice, municipal and superior courts, and court commissioners and referees." (§ 170.5, subd. (a).)

Second, as this case illustrates, administrative decision makers are drawn from the community at large. Especially in a small town setting they are likely to have knowledge of and contact or dealings with parties to the proceeding. Holding them to the same standard as judges, without a showing of actual bias or the probability of actual bias, may discourage persons willing to serve and may deprive the administrative process of capable decision makers.

Third, in *Andrews* the Supreme Court stated that ". . . the appearance of bias standard may be particularly untenable in certain administrative settings. For example, in an unfair labor practice proceeding the Board is the ultimate factfinder, not the [administrative law officer]." (*Andrews* v. *Agricultural Labor Relations Bd.*, *supra*, 28 Cal.3d at p. 794.) That comment applies to the instant case as well. The Commission's findings and recommendation were submitted to the Council, which was required to review them and either affirm, revoke or modify the action taken. The Commission served only as an advisory body to the Council which had ultimate authority in the matter.

3. *Gai has waived any insufficiency of evidence contention.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 213.

## DISPOSITION

Judgment affirmed. Costs to respondent.

Ardaiz, P. J., and Harris, J., concurred.