Filed 2/20/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IRENA HAUSER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>VENTURA COUNTY BOARD<br>OF SUPERVISORS,<br><br>    Defendant and Respondent. | 2d Civil No. B276903<br>(Super. Ct. No. 56-2014-<br>00455399-CU-WM-VTA)<br>(Ventura County) |

 This case calls to mind the poem "The Tyger" from Songs of Experience by William Blake, the last stanza of which reads: "Tyger! Tyger! Burning bright In the forests of the night, What immortal hand or eye Dare frame thy fearful symmetry!"

 Irena Hauser applied for a conditional use permit (CUP) to keep up to five tigers on her property. The county planning commission and board of supervisors denied her application. She petitioned the trial court for a writ of administrative mandate. She appeals the trial court's denial of the petition. We affirm and decide, among other things, that substantial evidence supports the findings of the Ventura County Board of Supervisors (Board).

*FACTS*

Hauser submitted an application to the County of Ventura (County) for a CUP to keep up to five tigers on her 19-acre property. The property is located in an unincorporated area of the County near the City of Malibu. The project would include three tiger enclosures, a 13,500-square-foot arena with a roof over 14 feet in height at its highest point. It would be surrounded by an eight-foot-high chain link fence encompassing over seven acres.

Hauser's property is located within a half-mile of 57 residential lots, 28 of which currently have residences on them. There are 46 homes within a mile of the project. In addition, there are two children's camps within two to three miles of the property. The rugged topography combined with the dense vegetation would make retrieval of an escaped animal difficult even with the use of GPS devices.

Hauser represented in her application that she, her sister, their husbands or children would be on site with the tigers, with at least one family member on site at all times. Hauser and her sister have attended an eight-day class on animal husbandry, safety and training. The website for the course states, "There is no written exam nor any reading necessary for completing this course. All students receive Certificates of Completion." Their husbands and children have no formal training.

The animals would be used in the entertainment business, including movie sets, commercials and still photography. The animals would be transported from the property by sport utility vehicle or truck up to 60 times a year.

Neighbors opposed the project. They presented a petition containing approximately 11,000 signatures in opposition. In

addition, opponents presented news stories of numerous deaths and injuries from captive big cats.  Opponents also presented video showing two tigers uncaged in the backyard of Hauser's Beverly Hills home and photographs of Hauser and her sister with the tigers uncaged on a beach.  Hauser claimed that for the beach photographs there were barriers and safety personnel out of camera view.

The planning commission denied Hauser's permit application, and Hauser appealed to the Board.  After a hearing, the Board voted four-to-one to deny Hauser's application.

In denying the application, the Board found Hauser failed to prove two elements necessary for a CUP:  the project is compatible with the planned uses in the general area, and the project is not detrimental to the public interest, health, safety or welfare.

*DISCUSSION*

*I*

Hauser contends the Board's findings are not supported by substantial evidence in light of the whole record.

Review of an administrative decision made as a result of a proceeding in which a hearing is required is governed by Code of Civil Procedure section 1094.5.  The standard of review is abuse of discretion.  (*Id.*, subd. (b).)  Subdivision (c) of section 1094.5 provides that where, as here, the proceeding does not involve a fundamental vested right, "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in light of the whole record."

Hauser cites *La Costa Beach Homeowners' Assn. v. California Coastal Commission* (2002) 101 Cal.App.4th 804, 814, for the proposition that:  "'"The 'in light of the whole record'

3

language means that the court reviewing the agency's decision cannot just isolate the evidence supporting the findings and call it a day, thereby disregarding other relevant evidence in the record. [Citation.] Rather, the court must consider all relevant evidence, including evidence detracting from the decision, a task which involves some weighing to fairly estimate the worth of the evidence. [Citation.]"'"

Hauser misapprehends the substantial evidence rule. She, as the permit applicant, bears the burden of demonstrating her entitlement to the CUP. (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th at p. 1224.) Had the Board decided in Hauser's favor, its findings would have to be supported by substantial evidence. But the Board decided Hauser failed to carry her burden of proof as to two required elements of the CUP: the proposed development is compatible with planned land uses in the general area where the development is located, and the proposed development would not be detrimental to the public interest, health, safety, convenience or welfare. The determination that a party has failed to carry her burden of proof is, by its very nature, not required to be supported by substantial evidence, or any evidence at all. It is the lack of evidence of sufficient weight and credibility to convince the trier of fact that results in such a determination.

Moreover, Hauser's contention is based on a view of the evidence most favorable to herself. But that is not how we view the evidence. In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid*.) Where

4

the trier of fact has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

That there are 57 residential lots and 28 residences within a half mile and 46 homes within a mile of the project is alone sufficient reason to deny the project.

Hauser argues that the County never established a cutoff point for residential density in an area where tigers are kept. But no cutoff point is necessary. The area is undeniably residential. In fact, Hauser points to no other use being made of the surrounding parcels. It is reasonable to conclude that tigers do not belong in a residential area. Hauser argues that to permit a denial without standards is unfair. But the standard is whether the proposed use is compatible with uses in the area.

Hauser points out the area is zoned "Open Space." But she does not explain how the open space designation is served by a tiger compound that includes tiger enclosures, a 13,500-square-foot arena, and an eight-foot-high chain link fence, 2,338 feet in length, enclosing over seven acres. If anything, such a compound eliminates open space.

Hauser claims that other similar projects for which a permit was approved are in residential areas with even greater density. But each project must be analyzed on its own merits. Hauser cites no authority that requires the Board to approve her project simply because others have been approved in different locations.

Hauser claims she has an unblemished safety record. But the claim is belied by a video showing her tigers roaming freely in the backyard of her Beverly Hills home. There is also a photograph of Hauser and her sister with the tigers on a beach. Hauser claims that when the photograph was taken, there were security measures off-camera. But the Board was not required to believe her claim. Moreover, even with the security measures Hauser claims, the Board could still find that having uncaged tigers on a beach is irresponsible.

Moreover, it is anything but comforting that Hauser's only formal training is an eight-day class in which students are promised in advance that there is no written exam, no reading, and all students receive a certificate of completion. It is even less comforting that Hauser's plan includes leaving family members with no formal training alone on the premises with the tigers.

Hauser claims that the only credible evidence is that an escaped captive-born tiger poses almost no risk to the public. But Hauser fails to explain what makes such evidence credible. The administrative record is replete with instances in which people have been severely injured or killed by large cats, including a highly experienced Las Vegas entertainer who was mauled almost to death by his tiger. There is more than ample evidence to support a finding that Hauser's animals pose a danger to the public. That Hauser apparently sees no such danger is itself a compelling reason to deny her a CUP.

Hauser cites a Board staff report stating that it is not reasonably foreseeable that a tiger would escape from her facility. But the administrative record contains numerous instances where tigers have escaped. In one instance, a tiger escaped from an enclosure at the San Francisco Zoo. The enclosure had a 20-

foot-wide moat and a 12-and-one-half-foot-high wall. The tiger quickly killed a teenager and followed two other people for 300 yards before mauling them. No matter how well designed and constructed the enclosure, no matter how stringent the safety protocol, if there is one thing that is reasonably foreseeable, indeed, almost inevitable, it is human error. The Board is not bound by its staff's opinion as to what is reasonably foreseeable.

Finally, Hauser claims the Board denied her appeal because no matter how safe the proposed facility would be, no one could eliminate the possibility of human error. Hauser argues "*Impossibilium nulla obligatio est*," that is, there can be no obligation to do the impossible.

We are more impressed by the Latin than by the argument. No one is suggesting Hauser is obligated to do the impossible. The Board's decision does not obligate her to do anything. Her argument amounts to nothing more than that because it is impossible to avoid human error, Hauser's neighbors must bear the risk. Applying Hauser's logic, there is no limit to the risky ventures that could be imposed on a residential neighborhood. Hauser is not obligated to own tigers. Her well-intentioned desire to own them does not trump her neighbors' right to safety and peace of mind.

## II

Hauser contends she did not receive a fair hearing before the Board.

At the hearing, before Hauser's presentation, Board members disclosed prehearing contacts concerning Hauser's CUP petition. Supervisor Peter Foy said he and his staff met with the "people with the tigers" and attorney Michael Bradbury, who represents project opponents. Supervisor Kathy Long disclosed

she had one brief meeting with Bradbury and received e-mails. Supervisor John Zaragoza disclosed he met with opponents and had "some e-mails."

Later in the hearing, the supervisors made additional disclosures. Supervisor Linda Parks disclosed she met with five residents in her office and they said they were "frightened of the concept." Parks also spoke to her staff about the 20/20 television program that went to the site. Supervisor Foy said he spoke with Bradbury for about a half-hour. Bradbury told Foy there is a large group of neighbors opposing the project. Bradbury did not present him with any evidence. Supervisor Zaragoza said he met with two opponents of the project who told him that over 11,000 Ventura residents had signed a petition against it.

In response to interrogatories propounded by Hauser in her petition for writ of administrative mandate, Supervisors Zaragoza and Parks disclosed they met briefly with Tim Gallagher and an unknown person when Gallagher dropped off a voluminous petition at their offices. Supervisor Steve Bennett disclosed that his senior aid met with Gallagher when he dropped off the petition. Supervisor Parks disclosed she had a brief telephone conversation with a project supporter who believed Hauser was trying to establish an animal sanctuary.

Hauser argues the Board members violated their own rules. The County of Ventura Administrative Policy Manual provides in part:

"a. . . . [N]o member of the Board shall, after application thereon has been filed, solicit or receive evidence outside of the public hearing on a matter for which a public hearing is required by State law or County ordinance; . . .

8

"b.  Members of the Board shall avoid personal contacts, correspondence and telephone calls concerning substantive issues relating to an agenda item outside of the public hearing and shall inform persons contacting them to make their information or objections known at the public hearing.

"c.  Any member of the Board who received evidence outside of the public hearing or has viewed the subject property, or is familiar with the subject property, shall disclose at the hearing such evidence and his/her observations and familiarity with the property so that all interested persons may be aware of the information upon which he/she is relying and have an opportunity to respond to such information."

Hauser points to nothing in the administrative policy manual, or any other authority, that would prohibit a Board member who received such information from participating in the hearing and decision.  The only sanction for receiving such information is in paragraph c. of the policy:  disclosure.  The Board members made such disclosures.

Hauser raised no objection until after the Board members denied her CUP petition.  In fact, Supervisor Foy disclosed that he had met with the "people with the tigers."  Thus, Hauser engaged in the same activity of which she now complains.

In any event, the standard of impartiality required at an administrative hearing is less than that required at a judicial proceeding.  (*Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 219.)  Thus, in *Todd v. City of Visalia* (1967) 254 Cal.App.2d 679, 691, the court rejected the contention that councilmen who had acquired information outside the hearing room concerning a proposed assessment district were disqualified from voting at a hearing to determine the validity of the district.  In citing *Todd*

9

with approval, our Supreme Court stated, "A councilman has not only a right but an obligation to discuss issues of vital concern with his constituents . . . ." (*City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 780.)

Unless a decisionmaker has a financial interest in the outcome of the hearing, he or she is presumed to be impartial. (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737.) Bias and prejudice must be established by clear evidence. (*BreakZone Billiards v. City of Torrance*, *supra*, 81 Cal.App.4th at p. 1237.) It is not enough to overcome the presumption of impartiality for a party to show the appearance of bias. (*Gai v. City of Selma*, *supra*, 68 Cal.App.4th at p. 222.) A party must show either actual bias or show a situation in which "'experience teaches that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable.'" (*Morongo*, at p. 737.)

Here Hauser has shown neither. The contacts Board members received from the public are the ordinary sort of contacts with elected public officials approved in *Todd* and *Fairfield*. There is no evidence that Board members had any personal bias against Hauser or were in favor of the project opponents. That Board members may have violated paragraphs a. and b. of the policy manual is insufficient to show bias against Hauser. They did not promise to vote a particular way. Finally, they complied with paragraph c. of the policy manual by disclosing the contacts.

Hauser received a full and fair hearing that covers over 3,340 pages of administrative record. She fails to show any

10

evidence that her project was denied on any basis other than its merits.

The judgment is affirmed.  Costs on appeal are awarded to respondent.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

11

Rocky J. Baio, Judge

Superior Court County of Ventura

_____

Casselman Law Group, David B. Casselman, David Polinsky, Kirk S. Comer for Plaintiff and Appellant.
Leroy Smith, County Counsel, Andrew Gschwind, Assistant County Counsel, for Defendant and Respondent.