Filed 8/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of NORMA FARRANT. | 2d Civil No. B307338 (Super. Ct. No. 56-2016-00483787-PR-CP-OXN) (Ventura County) |
| ANGELIQUE FRIEND, as Conservator, etc., Petitioner and Respondent, v. DUANE FARRANT, Objector and Appellant. | |

      This case serves as a textbook example of how a fiduciary should not proceed. Appellant continues to demonstrate that he has no concept of his duty to his elderly and incapacitated mother and her conservatorship estate. This is Duane Farrant's third appeal concerning the conservatorship of the person and estate of his mother, Norma Farrant (Norma or conservatee). (See *Conservatorship of Farrant*, (Aug. 22, 2019, B289203) [nonpub.

opn.] and (Feb. 22, 2021, B306501) [nonpub. opn.].)[1] He appeals from orders requiring him to pay $63,448.90 for misappropriation of Norma's assets, surcharging in the same amount appellant's share of interpled funds, and imposing sanctions of $121,000 for failing to timely file an accounting of his actions relating to Norma's estate. Appellant contends that the probate court erroneously (1) ordered him to render an accounting because he did not owe a fiduciary duty to the estate, (2) based its decision on affidavits and declarations, and (3) denied his request for an evidentiary hearing. We affirm.

*Factual and Procedural Background*

Norma was born in 1926. In 2008 she executed a durable power of attorney granting appellant, as her attorney-in-fact, broad powers to manage her property. The power of attorney would become effective upon a determination that Norma was "'incapacitated.'"

In September 2015, when Norma was living in Missouri, a Missouri court ordered appellant to account for all transactions conducted by him on behalf of Norma during the one-year period beginning on September 21, 2014. In 2016 Norma moved back to California.

In January 2017 Angelique Friend, respondent, was appointed conservator of Norma's person and estate. In November 2017 Diana Farrant (Diana), Norma's daughter, filed a

---

[1] In the first appeal appellant appealed from an order directing the sale of a residence in Newbury Park (the Newbury Park property). We dismissed the appeal as moot because the property had already been sold. In the second appeal we affirmed an order voiding a deed in which appellant's mother had purportedly quitclaimed the Newbury Park property to him before it was sold.

petition in the Ventura County Superior Court to compel appellant "to account for his actions on behalf of Norma Farrant for the period September 21, 2014, to date . . . ." As an exhibit to her complaint, Diana attached proof that a physician had examined Norma on June 12, 2015. He opined that Norma is "incapacitated" because "she is unable (completely & totally) to receive & evaluate information or to communicate decisions such that she lacks capacity to meet essential requirements for food, clothing, shelter and safety." She was living in a skilled nursing facility.

In February of 2018, the probate court conducted a hearing on Diana's petition. Diana's counsel said his client was "just piggybacking on the Missouri order" that appellant account for the one-year period beginning on September 21, 2014. He asserted that appellant had "never complied with the Missouri order."

At the hearing appellant appeared in propria persona. He told the court that on September 21, 2014, he had control over Norma's pension checks and her share of the rental income from the Newbury Park property. (See fn. 1 at p. 2, *ante*.) The probate court ordered appellant "to do a formal account -- for the period September 21, 2014, to January 31, 2018 -- . . . for any pension checks you received on behalf of [Norma] and any rental monies you received on [her] behalf . . . ." The accounting was due on or before March 30, 2018.

In a minute order dated July 10, 2018, the court noted that appellant had failed to file the accounting. The court ordered appellant "to appear in person or by video court call on October 16, 2018, . . . and show cause for failure to file his account as ordered."

3

At the hearing on October 16, 2018, appellant was not present in person or by video court call. His attorney, Mr. Dickens, appeared in court on his behalf. The probate court issued orders to show cause why sanctions should not be imposed against appellant for failing to appear personally or by video court call and for failing to file an accounting. It ordered appellant to file the accounting on or before December 14, 2018. The court warned appellant's counsel: "Now, make no mistake, Mr. Dickens, the hammer is coming down very hard if I don't get a good accounting. There are no more excuses. There is no more delay. . . . This is the last . . . continuance that he's going to get to get this accounting filed . . . ."

On January 29, 2019, the probate court conducted a hearing on the orders to show cause. Appellant and his counsel personally appeared in court. Counsel said the accounting had not been prepared. Counsel explained: "[M]y client . . . made diligent efforts . . . trying to get the bank statements and he was unsuccessful, but we will subpoena those records and I will get the accounting in if you give us a reasonable amount of time." "I believe there was a flood, a lot of [appellant's] records were damaged, and so that's why we're having to subpoena them [from the banks]."

Counsel for respondent (conservator Friend) protested: "[T]his is the fourth or fifth time we have been here since the initial order. Each time it's the same argument. . . . We have racked up over $100,000 in fees . . . , all needlessly." The court responded: "The Court . . . has heard about every excuse in the book as to why [the accounting] hasn't been provided. . . . I am left really with no confidence that this will actually occur, despite Counsel's representations to the contrary. [¶] The Court does

4

find it in the best interest of this estate to impose sanctions [against appellant] of $1,000 per day until the accounting is filed . . . ."

On May 31, 2019, appellant filed an accounting.[2] It showed that he had received two payments of rental income for October and November 2014. Each payment was $2,575. For the period from September 16, 2014 through November 10, 2017, appellant listed disbursements totaling $44,322.05 for expenses he had incurred in maintaining the Newbury Park property. The accounting mentioned nothing about Norma's pension income. The accounting included bank statements on which most of the information had been redacted.

At a hearing on September 27, 2019, appellant appeared with new counsel (Mr. Uku). The probate court granted counsel's request to file an amended accounting on or before December 20, 2019. The due date was later extended to January 30, 2020. The court found that appellant had "failed to file an Amended Account."

In June 2020 respondent filed an objection to appellant's accounting. After hearings conducted in July 2020, the probate court found that: (1) appellant "was in control of [Norma's] pension income in the amount of $35,656.76, and failed to report said income in his account, and breached his fiduciary duty by comingling funds and self-dealing by using them for his own purposes"; (2) for the Newbury Park property, appellant received rental income of $101,150, one-half of which ($50,575) belonged to Norma since she owned a half-interest in the property; and (3) expenses for the Newbury Park property totaled $45,565.72, one-

_____

[2] This was four years after he had been ordered to file an accounting in Missouri in 2015.

5

half of which ($22,782.86) was allocable to Norma's half-interest in the property. Therefore, the amount owed by appellant to Norma was $63,448.90 ($35,656.76 + $50,575 - $22,782.86 = $63,448.90). The court ordered appellant to pay this amount to "the Conservatorship Estate of Norma Farrant." The court also ordered that appellant's "share of the [proceeds from the] sale of the [Newbury Park] property . . . is hereby surcharged . . . $63,448.90." Pursuant to an interpleader action, the sale proceeds had been deposited with the court. Counsel for respondent claimed that appellant had "already . . . received $150,000 out of the interple[]d funds."

Finally, the court ordered appellant to pay sanctions totaling $121,000 for the 121-day period from January 29, 2019, to May 31, 2019, when appellant filed his accounting. The court directed: "This sanctioned amount shall be immediately paid by [appellant] to Angelique Friend, Conservator of the Estate of Norma Farrant, and shall be a judgement against [appellant], until paid in full."[3]

---

[3] On January 29, 2019, the probate court ordered sanctions at the rate of $1,000 per day until the accounting was filed. This was fair warning. Nevertheless, appellant contends: "[T]he order imposing the $1,000 daily sanctions for failure to file accounting should be set aside for violation of the appellant's due process rights because the Notice of the Ruling of the said order" was not filed until a week later. This contention borders on being ridiculous. Appellant has not shown how the one-week filing delay prejudiced him. Appellant, not the courts, engaged in lengthy and unexplained delay. Appellant is fortunate that he was not the subject of contempt proceedings and/or referral to the district attorney's office for financial elder abuse investigation.

*Claim that Probate Court Erroneously Ordered*
*Accounting Because Appellant Was Not a Fiduciary*

A probate court generally has discretion to grant or deny a petition for an accounting, and the court's decision is reviewed for abuse of discretion. (See *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1413 ["Determining the need for an accounting is a matter within the trial court's sound discretion"]; *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 520.) "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion . . . .'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).)

When the probate court ordered appellant to account, the court said, "[I]t's a standard, when there's a fiduciary, to do a formal account." Appellant claims that the probate court abused its discretion and acted "in excess of [its] jurisdiction" because he did not owe a fiduciary duty to conservatee's estate. He is wrong.

First, "a fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting. [Citation.] The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179-180.) In open court appellant said that on September 21, 2014, he had control over Norma's pension checks and her share of the rental income from the Newbury Park property. Appellant was obliged to surrender these payments to the conservatorship estate. Thus, there was a

7

special relationship between appellant and Norma that warranted the order compelling appellant to account for the pension checks and rental income.

Second, the court did not err because there was a fiduciary relationship between appellant and Norma. Probate Code section 39 provides: "'Fiduciary' means . . . attorney-in-fact under a power of attorney . . . ." In 2008 Norma appointed appellant as her attorney-in-fact under a durable power of attorney, the appointment to become effective upon a determination that she was incapacitated. In January 2009 appellant accepted the appointment in writing. In June 2015 a physician opined that Norma was incapacitated. Respondent's counsel told the court, "We do know that [appellant] signed . . . a deed on the [Newbury Park] property using that power of attorney, because that's recorded, but we don't know what else he did with it." It was reasonable for the probate court to draw the inference that, in exercising control over Norma's pension checks and half-share of the rental income, appellant was purporting to act as her attorney-in-fact under the durable power of attorney. The minute order for the hearing conducted on February 20, 2018, states, "The court grants the petition ordering [appellant] to file a statutorily compliant accounting for his activities as actual or ostensible attorney-in-fact for the [Newbury Park] real property . . . ."

*Appellant Forfeited Claim that the Probate Court's Order Was Based on Affidavits and Declarations*

For the first time on appeal, appellant contends that the probate court "abused its discretion and committed reversible error in . . . basing its decision on affidavits and declaration against appellant's objection." (Bold and capitalization omitted.)

8

"It has long been the rule that in probate matters 'affidavits may not be used in evidence unless permitted by statute. . . .'" (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1308-1309.) "[T]he Probate Code limits the use of affidavits to 'uncontested proceeding[s].'" (*Id.* at p. 1309.) "Consequently, 'when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing. . . .'" (*Ibid;* see also Prob. Code § 1022.)

The probate proceeding here was contested. But appellant did not object to the probate court's consideration of affidavits and declarations. By failing to object, appellant forfeited the issue. The probate court properly considered the affidavits and declarations. (*Estate of Fraysher* (1956) 47 Cal.2d 131, 135 ["evidence which is admitted in the trial court without objection, although incompetent, should be considered in support of that court's action [citations], and objection may not be first raised at the appellate level"].)

*The Probate Court Properly Denied*
*Appellant's Request for an Evidentiary Hearing*

Appellant argues that the probate court "abused its discretion and committed reversible error in denying [his] request for evidentiary hearing." (Bold and capitalization omitted.) The standard of review is abuse of discretion. (See *Estate of Lensch* (2009) 177 Cal.App.4th 667, 676.)

Appellant has failed to show an abuse of discretion. (See *Denham*, *supra*, 2 Cal.3d at p. 566.) Instead of specifying the factual issues he intended to litigate and the relevant evidence

9

(testimony and exhibits) he would produce at the hearing, appellant's counsel made vague representations.[4]

In the prior appeal decided in February 2021, *Conservatorship of Farrant* (B306501), *supra*, appellant contended that the trial court had abused its discretion in denying his request for an evidentiary hearing concerning the disputed ownership of the Newbury Park property. We rejected appellant's contention for the same reasons that we reject his contention in the present appeal. We stated: "[A]ppellant . . . requested an evidentiary hearing without specifying the factual issues he intended to litigate at the hearing and without

---

[4] Counsel said: "[A]lmost all of the issues raised by the OSC would dissipate through an evidentiary hearing of the accounting where my client would take this time and explain what happened." "[A]ll we asking for is for a hearing on these issues raised by the [court's] tentative [ruling] and . . . what is on calendar today. We believe that if there's a full evidentiary hearing, the Court may change its mind, and the result would be different." "I believe that my client wants an opportunity to be heard. That is his instruction. He wants to address the Court then. . . . He wants . . . testimony taken. . . . And he believes that you have a fairer shape if he comes to court and the Court examines him in person and to correct some of this notions that he believes the Court now has them." "[H]e wants to be able to demonstrate to the Court that he cooperated with counsel. He did what he could in good faith. And he believes that his credibilities are at issue, and he believes that that can be righted with an evidentiary hearing. [¶] . . . And he asked me to clear with the Court to hear him out in person. . . . [¶] . . . [J]ust for fairness reasons, let's give him his day in court." "[H]e believes that if the Court give[s] him an opportunity to address the Court and make additional inquiry contemporaneously, . . . he would come out better, and the sanction at least could be reduced."

explaining why a hearing was necessary. . . . [¶] Furthermore, appellant did not identify the witnesses who would testify at the evidentiary hearing, nor did he make an offer of proof as to the substance of the evidence he would present at the hearing." (*Id.*, slip opn. at pp. 8-9.)

*Appellant Has Not Shown Prejudice*

"[A]n abuse of discretion results in reversible error only if it is *prejudicial*." (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1190; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) The burden is on the appellant to show prejudice. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) An assessment of prejudice cannot be made here because appellant did not make an offer of proof in the probate court. (See *People v. Anderson* (2001) 25 Cal.4th 543, 580 [rule requiring offer of proof in the trial court (Evid. Code, § 354, subd. (a)) "is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice"]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 ["the failure to make an adequate offer of proof in the court below ordinarily precludes consideration on appeal of an allegedly erroneous exclusion of evidence"].) Appellant does not discuss the issue of prejudice. Accordingly, appellant has failed to carry his burden of showing that the alleged abuse of discretion prejudiced him.

*New Claims in Appellant's Reply Brief*

Appellant makes two new claims in his reply brief. First, appellant claims that, because the Probate Court awarded sanctions pursuant to Code of Civil Procedure section 177.5, the amount of sanctions was limited to $1,500. Section 177.5 provides, "A judicial officer shall have the power to impose

11

reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, *payable to the court*, for any violation of a lawful court order by a person, done without good cause or substantial justification." (Italics added.)

The probate court did not impose section 177.5 sanctions payable to the court. It ordered that sanctions be payable to the conservatorship estate. (See *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1264 [court upheld award of sanctions at rate of $4,000 per day for refusal to comply with discovery order where sanctioned party "abused the litigation process and has shown little respect for the superior court's authority"].)

The second new claim is that the probate court's order imposing sanctions violated rule 2.30 of the California Rules of Court (rule 2.30). Appellant's claim lacks merit. Rule 2.30 is inapplicable. It permits sanctions to be imposed for violations of "the rules in the California Rules of Court . . . ." (Rule 2.30(a); see also rule 2.30(b).) Appellant was not sanctioned for violating a rule of the California Rules of Court. He was sanctioned for failing to prepare and file an accounting in violation of the probate court's express order.

### Disposition

The orders appealed from are affirmed. Respondent shall recover her costs on appeal.

12

CERTIFIED FOR PUBLICATION.


                                                    YEGAN, J.

We concur:


         GILBERT, P. J.


         PERREN, J.


13

Roger L. Lund, Judge

Superior Court County of Ventura

_____

Law Offices of Levi Reuben Uku and Levi Reuben Uku, for Objector and Appellant.

Law Offices of David A. Esquibias, David Esquibias and Sara J. McLemen, for Petitioner and Respondent.